**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

WILLIAM MARK ENGLAND,            §
No. 571544,                      §
Petitioner,                      §
                                 §
v.                               §      NO. 3:05-CV-2133-G
                                 §
NATHANIEL QUARTERMAN, Director,  §
Texas Department of Criminal Justice,  §
Correctional Institutions Division,    §
Respondent.[1]                   §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the District Court in

implementation thereof, the subject cause has previously been referred to the United States

Magistrate Judge.  The findings, conclusions, and recommendations of the Magistrate Judge, as

evidenced by his signature thereto, are as follows:

**FINDINGS AND CONCLUSIONS:**

**Type of Case:**  This is a petition for habeas corpus relief filed by a state inmate pursuant to 28

U.S.C. § 2254.

**Parties**:  Petitioner William Mark England ("England" or "Petitioner") is confined at the Ellis

Unit of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-

CID") at Huntsville, Texas.  Respondent is the Director of the TDCJ-CID.

**Statement of the Case:**  On February 22, 1990, in Hunt County, Texas, Petitioner pleaded guilty

in cause number 15,764 to the offense of burglary of a habitation.  (Response, Ex.  A at 6.)  The

---

[1] Effective June 1, 2006, Nathaniel Quarterman was named the Director of the Texas
Department of Criminal Justice.  The caption is being changed pursuant to Fed. R. Civ. P. 25(d).

trial court deferred a finding of guilt and placed him on probation for a period of eight years. (Response, Ex. A at 6.)  On November 13, 1990, the trial court adjudicated England's guilt and sentenced him to ten years imprisonment.  (Response, Ex. A at 1.)  On the same day, Petitioner also pleaded guilty in cause number 16,200 to a separate charge of burglary of a habitation. (Response, Ex. A at 10.)  The trial court sentenced him to fifteen years imprisonment. (Response, Ex. A at 10.)  It also appears that England was sentenced to ten years probation for an additional burglary of a habitation offense in cause number 16,198 on the same day.[2] (Response, Ex. A at 14.)  One month later, on December 11, 1990, in Rains County, Texas, Petitioner pleaded guilty in cause number 2887 to a fourth offense of burglary of a habitation. (Response, Ex. A at 12.)  The trial court sentenced him to five years imprisonment.  (Response, Ex. A at 12.)

After serving approximately one year in prison, Petitioner was released to parole on August 23, 1991.  (Response, Ex. B at 1-2.)  Over nine years later, on November 29, 2000, England's probation on cause number 16,198 was revoked.  (Response, Ex. A at 12.)  The trial court sentenced him to two years and six months imprisonment.  (Response, Ex. A at 12.)

Later that same year England was charged in cause number 20,439 with the offense of injury to an elderly person.  (Response, Ex. B at 4.)  The Texas Board of Pardons and Paroles ("BPP") revoked his parole on September 11, 2000.[3]  (Response, Ex. B at 3.)  Petitioner was

---

[2]  The record does not contain the judgment in cause number 16,198.  A copy of the judgment revoking probation in this cause is included in the record.  (Response, Ex. A at 12.)

[3]  The court notes that the summons date, rather than the warrant issue date is used for computing time spent on parole.  *See Ex parte Spann*, 132 S.W.3d 390, 393 n.6 (Tex. Crim. App. 2004).  However, the record contains only the warrant issue date for the instances in which Petitioner's parole was revoked.  The court thus utilizes the warrant issue date, as it does not

later convicted of the offense on December 15, 2000 and was sentenced to five years imprisonment.  (Supplemental Response at 1.)

Petitioner was again released to parole on May 30, 2002.  (Response, Ex.  B at 8-9.)  The record does not contain a copy of the judgment revoking England's parole.  However, such a revocation apparently occurred, as Petitioner was released on parole for a third time on March 8, 2004.  (Response, Ex.  B at 13-14.)

On July 14, 2004, Petitioner pleaded guilty in cause number 22,315 to the offense of felony escape.  (Response, Ex.  A at 17.)   The trial court sentenced him to three years imprisonment.  (Response, Ex.  A at 17.)  England's parole was revoked by the BPP on June 21, 2004, due to his new conviction.  (Response, Ex.  B at 15-16.)

On January 18, 2005,[4] pursuant to Texas Code of Criminal Procedure article 11.07, England filed two habeas applications challenging the revocation of his parole.  *Ex Parte England*, Appl. No.  61,470-01 at 7; *Ex Parte England*, Appl. No.  61,470-02 at 7.  His applications were denied by the Texas Court of Criminal Appeals without written order on August 17, 2005.  *Ex Parte England*, Appl. No.  61,470-01 cover; *Ex Parte England*, Appl. No.  61,470-02 at cover.

---

affect the outcome of this case.

[4]  Both of Petitioner's applications were file stamped "January 18, 2004" by the clerk of the District Court in Hunt County.  However, Petitioner dated his application "January 13, 2005."  This court assumes that the applications were erroneously stamped with the year 2004 rather than 2005, as the applications clearly refer to events which occurred after January 18, 2004.  *See*, *e.g.*, *Ex Parte England*, Appl. No.  61,470-01 at 9 (Petitioner acknowledges that he filed a time credit claim with the Texas Department of Criminal Justice–Institutional Division on December 7, 2004).

3

Petitioner filed the instant petition on October 25, 2005.[5]  On February 27, 2006,

Respondent filed his answer contending that Petitioner's first two claims are unexhausted and

procedurally barred and that Petitioner's third and fourth claims are without merit.  Petitioner

filed a traverse on March 17, 2006.

**Findings and Conclusions:**  Review of England's claims is governed by the provisions of the

Antiterrorism and Effective Death Penalty Act ("AEDPA") because he filed his § 2254 petition

after the effective date of the AEDPA.  The AEDPA, in pertinent part, provides that a federal

court cannot grant relief under § 2254 of the act unless the adjudication of a state prisoner's

claim in the state court system, "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding."  28

U.S.C § 2254(d)(1)-(2) (1996).  Findings of fact made by a state court are presumed to be correct

absent clear and convincing evidence rebutting the presumption.  § 2254(e)(1).  Where a

petitioner challenges a state court's application of federal law under § 2254(d)(1), the petitioner

must also show that the state court's decision was not only erroneous, but objectively

unreasonable.  *See Yarborough v.  Gentry*, 540 U.S. 1, 5, 124 S.  Ct.  1, 4 (2003) (citing *Williams*

*v.  Taylor*, 529 U.S. 362, 409, 120 S.  Ct.  1495, 1521 (2000)); *see also Morrow v.  Dretke*, 367

---

[5]  Under the "mailbox rule," a prisoner's federal habeas corpus petition is deemed filed when he delivers it to prison officials for mailing to the district court.  *Spotville v.  Cain*, 149 F.3d 374, 378 (5th Cir.  1998).  England signed his federal habeas petition on October 25, 2005.  It was filed stamped on October 31, 2005.  For the purposes of the recommendation, it is assumed that England placed his § 2254 petition in the prison mail system on the date he signed his petition.

F.3d 309, 313 (5th Cir.  2004) ("[F]ederal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable").

**Petitioner's First Claim is Unexhausted and Without Merit**

Petitioner's first claim pertains to the parole board's alleged failure to hold a hearing before revoking his parole in 2004.[6]  Respondent argues that England failed to exhaust this claim.  A petitioner must fully exhaust state remedies before seeking federal habeas relief by submitting the factual and legal basis of any claim to the highest available state court for review. *See* 28 U.S.C. § 2254(b)(1).  A thorough review of England's two state habeas applications reveals that England failed to raise a claim pertaining to the lack of a parole revocation hearing. Consequently, his first claim is unexhausted.

Although it is clear that a federal court cannot grant relief on an unexhausted ground, it is equally clear that a court is not barred from denying relief on an unexhausted ground.  *See* 28 U.S.C. § 2254(b)(1)-(b)(2).  In the present case, England is not entitled to relief because he voluntarily waived his right to a parole revocation hearing on August 13, 2004.[7]  (Response, Ex. B.  at 16-20.)

**Petitioner's Remaining Claims**[8]

---

[6]  Respondent interprets England's petition to raise claims pertaining to both the 2001 and 2004 parole revocations.  However, in his traverse Petitioner acknowledges that his claims relate only to the 2004 revocation.  (Traverse at 1.)

[7]  Petitioner alleges that he only waived a revocation hearing on cause number 2887 but not on cause number 16,200.  However, because all of Petitioner's sentences were running concurrently, the revocation pertained to his longest sentence, which was fifteen years.  *See Ex parte Ruthart*, 980 S.W.2d 469, 473  (Tex. Crim. App. 1998).

[8]  Respondent argues that England also failed to exhaust his second claim which alleges that the parole board improperly reinstated Petitioner's fifteen year prison sentence for burglary

Petitioner's remaining claims, while exhausted, are wholly without merit.  In his second claim, Petitioner alleges that the parole board improperly reinstated his fifteen year prison sentence for burglary of a habitation after revoking is parole on a separate sentence.  In his third claim, England asserts that he is entitled to credit for the time spent on parole–i.e. "street-time."[9] Petitioner's fourth claim is an amalgamation of his second and third claims–he argues that his fifteen year sentence was never revoked and therefore, his fifteen year sentence should have been discharged because the sum of his calendar time spent in prison and "street-time" credits from time spent on parole equal fifteen years.

On November 13, 1990, England pleaded guilty in cause number 16,200 to the charge of burglary of a habitation and received a sentence of fifteen years imprisonment.  (Response, Ex. A at 10.)  While Petitioner received numerous other shorter sentences of imprisonment, *see* (Response, Ex.  A at 1, 12, 17), all sentences were deemed to run concurrently.  *See* (Response, Ex.  A at 1, 12, 17).  Therefore, his maximum term of imprisonment is fifteen years.  *See Ruthart*, 980 S.W.2d at 473 (noting that "[f]or an inmate serving two or more concurrent sentences, we believe his 'maximum term' must be the longest of the concurrent sentences, because this is the sentence that will keep him incarcerated for the longest amount of time.)

 Petitioner served approximately one year in prison before being released on parole. (Response, Ex.  A at 10; Ex. B at 1-2.)   He remained on parole for over nine years until the BPP

---

of a habitation.  However, the record reveals that England raised this claim in ground one of both of his state applications.  *See Ex Parte England*, Appl. No.  61,470-01 at 11; *Ex Parte England*, Appl. No.  61,470-02 at 11.

 [9]  "Street-time credit refers to calendar time a person receives towards his sentence for days spent on parole or mandatory supervision."  *Spann*, 132 S.W.3d at 392 n.2.

6

revoked his parole on September 11, 2000.  (Response, Ex.  B at 4.)  After Petitioner's parole

was revoked, the credit he earned for the nine years spent on parole was mandatorily forfeited

under Texas law.[10]  *See Spann*, 132 S.W.3d at 393 (citing former Tex. Gov't Code Ann. §

508.283(c)).  Thus, in 2001, Petitioner retained credit only for the calendar time served before he

was released on parole, which was roughly one year.  Although Petitioner's post-2001 parole

history is somewhat unclear, it is evident that at the time Petitioner filed his federal habeas

petition he had not served fifteen years of calendar time.  Therefore his second claim is without

merit.  Consequently, his fourth claim is also without merit, as it also assumes that Petitioner had

accumulated fifteen years of calendar time and "street-time" credits.

Likewise, Petitioner's argument that he has a federal constitutional entitlement to"street-

time" credits is also without merit.  There is no federal constitutional right to credit for time

spent on parole if the petitioner violates the conditions of his release.  *Thompson v. Cockrell*, 263

F.3d 423, 426 (5th Cir. 2001).

Thus, because England has not shown that he has served his fifteen year sentence in full

or that he has a constitutionally protected interest in his "street-time" credits, he has failed to

demonstrate that he is confined in violation of the United States Constitution or the laws or

treaties of the United States.  *See* §  2254(a).

---

[10]  While the law in effect at the time of England's 2001 revocation provided for the
mandatory forfeiture of "street-time" credits after the revocation of parole, the law was
subsequently changed so that "certain parole violators will receive street-time credit if the
'remaining portion' of their sentence is less than the amount of time they have spent out on
parole."  *Gibson v. Dretke*, No. 04-20456, 2006 WL 997399, at *1 (5th Cir.  April 11, 2006)
(quoting *Spann*, 132 S.W.3d at 392); *see also* Tex. Gov't Code Ann. § 508.283.  However,
Petitioner did not qualify for street-time credit at the time of his 2004 parole revocation because
the remaining portion of his sentence was more than the amount of time spent on parole.
(Response, Ex.  B at 13-15.)

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the district court deny the petition on the

merits.


Signed this 5th day of July, 2006


Wm. F. Sanderson Jr.
United States Magistrate Judge



<u>NOTICE</u>

　　　In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.